## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 21-CV-61833-RUIZ/STRAUSS

**DONOVAN MCCLOUD,**

  Plaintiff,

v.

**KILOLO KIJAKAZI,**
Acting Commissioner of Social Security,

  Defendant.

_____/

## REPORT AND RECOMMENDATION

THIS MATTER came before the Court upon Plaintiff's Motion for Summary Judgment ("Plaintiff's Motion") (DE 23) and Defendant's Motion for Summary Judgment ("Defendant's Motion") (DE 24).  This case has been referred to me for a ruling on all pre-trial, non-dispositive matters and for a report and recommendation on any dispositive matters.  (DE 2).  I have reviewed both motions, all summary judgment materials, and the record in this case.  For the reasons discussed herein, I respectfully **RECOMMEND** that Plaintiff's Motion (DE 23) be **DENIED** and that Defendant's Motion (DE 24) be **GRANTED**.

## BACKGROUND

### I. PROCEDURAL HISTORY

Plaintiff filed claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") benefits on April 2, 2018, alleging a disability onset date of January 1, 2013.  (Tr. 301-02, 303-08).  His claims were denied initially and upon reconsideration.  (Tr. 84-105). Thereafter, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  (Tr. 145-54).  Plaintiff's hearing was held on July 16, 2019, before ALJ Jose Perez-Gonzalez.  (Tr. 44-67).

A supplemental hearing was also held on January 30, 2020. (Tr. 32-43). At both hearings, Plaintiff appeared with counsel and a vocational expert ("VE") testified. (Tr. 34, 46). On February 20, 2020, the ALJ issued his initial decision, finding that Plaintiff was not "disabled" under the Social Security Act from the disability onset date through the date of the decision. (Tr. 106-19).

Plaintiff requested Appeals Council review and his request was granted on October 20, 2020. (Tr. 124-26). The Appeals Council noted that Plaintiff turned 55 years old, which is the beginning of the "advanced age" classification,[1] less than a week after the ALJ issued his hearing decision. (Tr. 125). When faced with such a situation (a "borderline age situation"), the Appeals Council stated that an ALJ must consider whether using a higher age classification "would result in a determination . . . that the claimant is disabled." (Tr. 125). The ALJ's decision must also explain whether they considered the borderline age situation. (Tr. 125). Because the ALJ in this case did not address whether he considered the borderline age situation, the Appeals Council vacated the hearing decision and remanded the case to the ALJ for further proceedings. (Tr. 125). The Appeals Council's remand order stated the following:

Upon remand, the Administrative Law Judge will:

- Give further consideration to the claimant's maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations (20 CFR 404.1545 and 416.945 and Social Security Ruling 96-8p).

- Obtain supplemental evidence from a vocational expert to determine whether the claimant has acquired any skills that are transferable to other occupations under the guidelines in Social Security Ruling 82-41. The hypothetical questions should reflect the specific capacity/limitations established by the records as a whole. The Administrative Law Judge will ask the vocational expert to identify examples of such appropriate jobs and to state the incidence of such jobs in the national economy (20 CFR

---

[1] The Social Security Administration classifies an individual under age 50 as a "younger person," an individual between the ages of 50 and 54 as "a person closely approaching advanced age, and an individual age 55 or older as a "person of advanced age." 20 C.F.R. § 404.1563.

404.1566 and 416.966). Further, before relying on the vocational expert evidence the Administrative Law Judge will identify and resolve any conflicts between the occupational evidence provided by the vocational expert and information in the Dictionary of Occupational Titles (DOT) and its companion publication, the Selected Characteristics of Occupations (Social Security Ruling 00-4p).

In compliance with the above, the Administrative Law Judge will offer the claimant an opportunity for a hearing, take any further action needed to complete the administrative record and issue a new decision.

(Tr. 126).

On December 23, 2020, without holding another hearing after the Appeals Council's remand order, the ALJ issued a partially favorable decision. (Tr. 12-26). The ALJ found that Plaintiff "was not disabled prior to August 27, 2019, but became disabled on that date and has continued to be disabled through the date of th[e] decision." (Tr. 17). Plaintiff requested Appeals Council review of this decision and his request was denied on July 30, 2021, thereby leaving the ALJ's decision as the final decision of the Commissioner. (Tr. 1-9). Consequently, on August 31, 2021, Plaintiff filed this action seeking judicial review of the Commissioner's decision. (DE 1).

## II.   PLAINTIFF'S BACKGROUND

Plaintiff was 47 years old at the time of his alleged onset date, 53 years old at the time he applied for DIB and SSI benefits, 54 years old at the time of the initial and supplemental hearings, 54 years old when the ALJ issued his initial decision, and 55 years old when the ALJ issued his final decision. (Tr. 12, 37, 51, 106, 301, 303). He completed high school and had past relevant work as a truck driver. (Tr. 311-12). In his initial application, Plaintiff stated that he had seizures, diabetes, and a tumor. (Tr. 311).

## III.   INITIAL HEARING TESTIMONY AND FOLLOW UP EXAMINATION

Plaintiff stated that he has staring seizures, during which he bites his tongue. (Tr. 53). After his seizures, his tongue swells up and he feels groggy. (Tr. 53). The last time he had a

seizure was in October and November of 2018. (Tr. 50, 52). Plaintiff takes medicine to control his seizures and stated that it "probably" helps. (Tr. 54). Although Plaintiff did not have any seizures in 2019 (at the time of the hearing), he stated that he did not feel well at times and had to lay on his side. (Tr. 53, 56). Plaintiff stated that he had diabetes, but that he was taking medication for it. (Tr. 48). According to Plaintiff, his diabetes also causes him to "lay down" and "go to [s]leep." (Tr. 55). Plaintiff was also overweight. (Tr. 49). Plaintiff acknowledged that he had a tumor but that it was small, benign, and did not cause him problems. (Tr. 49, 55-56). Although it was not on his application, Plaintiff testified that he had a "fungus" or rash on his left knee and occasional pain in his groin. (Tr. 49, 56-57).

Plaintiff claimed that his medications would interfere with his ability to work. (Tr. 60). These medications were Levetiracetam (Keppra) and Oxcarbazepine (Trileptal). (Tr. 60-61). According to Plaintiff, the medications made him tired and drowsy. (Tr. 60). He also stated that his neurologist ordered him to avoid exposing himself to extreme temperatures, which could make it easier for him to get a seizure, and heights. (Tr. 62). Plaintiff's doctor also stated that he should not drive, but he admitted that he drives around the block. (Tr. 52).

Plaintiff stated that he worked as a truck driver for thirty years. (Tr. 57). He transported food and beverage carts and carrier cases. (Tr. 59). In addition to transporting the items, Plaintiff had to load and unload the trucks. (Tr. 58). He stated that he would have to lift items as heavy as fifty (50) pounds. (Tr. 59). Plaintiff testified that he was let go in 2014 because his seizures were affecting his work. (Tr. 59). The Vocational Expert ("VE") Susan Lazarus confirmed that

Plaintiff's past relevant work classification was a "truck driver," a position with a substantial vocational preparation ("SVP")[2] of 4 and an exertional level of medium.  (Tr. 66).

Due to the paucity of evidence in the record, the ALJ sought for a neurologist to evaluate Plaintiff and stated that he would hold another hearing after that evaluation.  (Tr. 64-66).  On August 1, 2019, Dr. Shabab Kidwai, M.D., conducted Plaintiff's neurological evaluation.  (Tr. 409-16).  Dr. Kidwai found that Plaintiff was alert and oriented times three and had normal memory and speech.  (Tr. 409).  According to Dr. Kidwai, Plaintiff had strength in all major muscles, and his sensory and coordination examinations yielded normal results.  (Tr. 409).  Plaintiff's neurological examination was also normal.  (Tr. 409).  Dr. Kidwai noted Plaintiff's history of seizures but noted that Plaintiff had not had a seizure in ten months and that his seizures were under control due to in part to his seizure medications.  (Tr. 409).  Dr. Kidwai completed an evaluation of Plaintiff's ability to do work-related activities.  (Tr. 411-16).  He opined that Plaintiff could frequently carry and lift ten pounds; occasionally carry and lift eleven to twenty pounds; frequently reach, handle, finger, feel, push, and pull with both hands; frequently use both feet; occasionally climb stairs and ramps, balance, stoop, kneel, crouch, and crawl; and could never climb ladders or scaffolds.  (Tr. 411, 414).  Dr. Kidwai opined that in an eight-hour workday, Plaintiff could sit for eight hours, stand for three hours, and walk for three hours.  (Tr. 412).

Dr. Kidwai also opined that Plaintiff could shop, travel without assistance, walk without assistance, walk a block at a reasonable place on an uneven surface, use public transportation, climb steps, prepare a simple meal, care for his hygiene, and handle paper and files.  (Tr. 412,

---

[2] SVP "is defined as the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." *Specific Vocational Preparation*, Dictionary of Occupational Titles (4th Ed., Rev. 1991) Appendix C, 1991 WL 688702.

416).   Regarding environmental limitations, Dr. Kidwai opined that Plaintiff should never be exposed to unprotected heights; humidity and wetness; dust, odors, fumes, and pulmonary irritants; extreme cold and heat; and vibrations; could occasionally operate a motor vehicle and be exposed to moving mechanical parts; and could be exposed to moderate noise.  (Tr. 415).  Dr. Kidwai did not identify the medical or clinical findings that supported his assessment of Plaintiff's limitations. (Tr. 415).  He also did not identify whether Plaintiff's limitations would last for twelve consecutive months.  (Tr. 416).

## IV.   **SUPPLEMENTAL HEARING TESTIMONY**

After Dr. Kidwai's evaluation, the ALJ held a supplemental hearing on January 30, 2022. (Tr. 32-43).    The ALJ took testimony from medical expert ("ME") Dr. Subramaniam Krishnamurthi, a new VE, Mark Tasso ("VE Tasso"), and brief testimony from Plaintiff.  (Tr. 34-42).  The ME reviewed the record and determined that Plaintiff had seizure disorder, psoriasis, high blood pressure, mild obesity, and multiple sclerosis.  (Tr. 35).  According to the ME, none of these impairments met or equaled a listed impairment.  (Tr. 36).  The ME opined that Plaintiff had the following residual functioning capacity ("RFC"):

> lift and/or carry 20 pounds occasionally, 10 pounds frequently.  He can sit for six hours per an eight hour workday; stand and walk six hours per an eight hour workday.  He can frequently climb stairs and ramps, should never climb ladders, ropes, and scaffolds. He can frequently balance stoop, kneel, crouch, and crawl.  He should avoid all exposure to unprotected heights, moving mechanical parts, and operating a motor vehicle.

(Tr. 36).  After he was asked by Plaintiff's attorney, the ME stated that he would not include any limitations regarding computers or flashing lights.  (Tr. 37).

Plaintiff briefly verified his age and VE Tasso testified.  (Tr. 37).  VE Tasso confirmed that Plaintiff's past relevant work was a truck driver.  (Tr. 39).  The ALJ's first hypothetical asked whether an individual with the limitations that Plaintiff was assessed would be able to perform

Plaintiff's past relevant work.  (Tr. 39).  VE Tasso opined that the individual would not be able to perform Plaintiff's past relevant work but would be able to perform the following jobs that were available in the national economy: inspector for batteries (SVP 2; light work; 49,000 jobs), information clerk (SVP 2; light work; 126,000 jobs), and mail sorter (SVP 2; light work; 33,000 jobs).  (Tr. 39).

Then, Plaintiff's attorney inquired whether the individual from the ALJ's first hypothetical could perform the three jobs identified above (inspector for batteries, information clerk, mail sorter) if that individual also could not be exposed to humidity, wetness, dust, odors, fumes, pulmonary irritants, and extreme cold, heat, and vibrations.  (Tr. 40).  VE Tasso opined that the individual would still be able to perform all three jobs.  (Tr. 40).  However, VE Tasso opined (in response to several more hypotheticals from Plaintiff's attorney) that the individual would not be able to perform the three jobs identified if they were off task for fifteen percent of the day or were absent two days per month.  (Tr. 41-42).

## **STANDARD OF REVIEW**

In reviewing claims brought under the Social Security Act, a court's role is limited.  *See Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  The Commissioner's findings of fact must be affirmed if they are based upon "substantial evidence."  *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).  "Substantial evidence is . . . such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Moore*, 405 F.3d at 1211 (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)).  It "is something 'more than a mere scintilla, but less than a preponderance.'"  *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (citation omitted); *see Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (stating that "the threshold for such

evidentiary sufficiency is not high").  "If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it."  *Dyer*, 395 F.3d at 1210 (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)); *see also Valdez v. Comm'r of Soc. Sec.*, 808 F. App'x 1005, 1008 (11th Cir. 2020) (same).  Courts "may not decide the facts anew, reweigh the evidence, or substitute [their] judgment for that of the [Commissioner]."  *Dyer*, 395 F.3d at 1210 (quoting *Phillips*, 357 F.3d at 1240 n.8); *Bloodsworth*, 703 F.2d at 1239.  In addition to determining whether the Commissioner's factual findings are supported by substantial evidence, courts must determine whether the ALJ applied the correct legal standards.  *See Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

## DISCUSSION

### I.   THE SEQUENTIAL EVALUATION

A "disability" is defined as an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  In making a disability determination, "the ALJ must consider the evidence in its entirety, including: (1) objective medical facts or clinical findings; (2) diagnoses of examining physicians; (3) subjective evidence of pain and disability as testified to by the claimant . . . and (4) the claimant's age, education, and work history."  *Maffia v. Comm'r of Soc. Sec.*, 291 F. App'x 261, 262-63 (11th Cir. 2008) (quoting *DePaepe v. Richardson*, 464 F.2d 92, 94 (5th Cir.1972)); *see Walden v. Schweiker*, 672 F.2d 835, 839 (11th Cir. 1982).

To arrive at a determination as to disability, the ALJ must undertake the sequential evaluation embodied in 20 C.F.R. § 416.920.  This process requires that the ALJ first determine

whether the claimant is presently engaged in substantial gainful activity. *See* 20 C.F.R. § 416.920(b). If so, a finding of "no disability" is made. 20 C.F.R. § 416.920(a)(4)(i).

If the claimant is not engaged in such work, then the ALJ must proceed to the second step and determine whether the claimant suffers from a "severe impairment." 20 C.F.R. § 416.920(a)(4)(ii). An impairment is severe if it significantly limits the claimant's physical or mental ability to perform basic work activities. *See* 20 C.F.R. § 416.920(c). If no severe impairment is found, then the ALJ will conclude that there is no disability; if a severe impairment is found, then the ALJ will proceed to the next step of the analysis. *See id.*

The third step requires the ALJ to determine whether the claimant's impairment meets or equals those listed in Appendix 1 of the Regulations. *See* 20 C.F.R. § 416.920(d). If so, the ALJ will find the claimant disabled without considering age, education, and work experience. *See id.* If not, the inquiry will proceed to the next stage. *See* 20 C.F.R. § 416.920(e).

Step four requires the ALJ to determine whether the claimant has the RFC to perform past relevant work. *See* 20 C.F.R. § 416.920(a)(4)(iv). The Regulations define RFC as "the most you can still do despite your limitations." 20 C.F.R. § 416.945(a)(1). The RFC determination takes into account "all of the relevant medical and other evidence," including the claimant's own testimony and the observations of others. 20 C.F.R. § 416.945(a)(3). An ALJ makes an RFC determination by considering the claimant's physical and mental abilities and limitations. *See* 20 C.F.R. § 404.1545. When assessing a claimant's physical abilities, an ALJ evaluates the claimant's ability to sit, stand, walk, lift, carry, push, pull, stoop, crouch, and reach. *See* 20 C.F.R. § 404.1545(b). And when assessing a claimant's mental abilities, an ALJ evaluates whether a claimant has limitations in "understanding, remembering, and carrying out instructions, and in

9

responding appropriately to supervision, co-workers, and work pressures in a work setting."   20 C.F.R. § 404.1545(c).

To determine the physical exertion requirements of jobs in the national economy, the Commissioner classifies jobs as sedentary, light, medium, heavy, and very heavy.  *See* 20 C.F.R. § 404.1567.  Jobs are also classified as unskilled, semi-skilled, and skilled.  *See* 20 C.F.R. § 404.1568.  Then, an ALJ must compare the RFC with the physical and mental demands of the claimant's past relevant work to determine whether the claimant is still capable of performing that kind of work.  If so, the claimant is found not disabled.  *See* 20 C.F.R. § 416.920(f).

If the claimant establishes an inability to return to past relevant work, the inquiry turns to step five.  *See* 20 C.F.R. § 416.920(a)(4)(v).  "At step five the burden of going forward shifts to the [Commissioner] 'to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform.'"  *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018) (quoting *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)).  If the Commissioner points to possible alternative employment, then the burden returns to the claimant to prove an inability to perform those jobs.  *See id.*  At this fifth and final step, the ALJ must resolve whether the claimant is capable of performing other work.  *See* 20 C.F.R. §§ 416.920(g), 416.960(c).

To help evaluate whether sufficient jobs exist that can be performed given the claimant's age, education, and physical limitations, the Commissioner has promulgated Medical Vocational Guidelines.  *See* 20 C.F.R. § 404, subpt. P, app. 2.  The guidelines may apply "where a person is not doing substantial gainful activity and is prevented by a severe medically determinable impairment from doing vocationally relevant past work."  20 C.F.R. § 416.969.  The guidelines are composed of detailed grids and rules, which direct a finding of disabled or not disabled based

on a claimant's RFC, age, education, and previous work experience.  *See Walker v. Bowen*, 826 F.2d 996, 1002 (11th Cir. 1987).

Yet, the guidelines "do not cover all possible variations of factors" and are inapplicable "if one of the findings of fact about the person's vocational factors and [RFC] is not the same as the corresponding criterion of a rule."  20 C.F.R. § 416.969.  Therefore, "[e]xclusive reliance on the grids is not appropriate *either* when [the] claimant is unable to perform a full range of work at a given residual functional level *or* when a claimant has non-exertional impairments that significantly limit basic work skills."  *Phillips*, 357 F.3d at 1242 (citation omitted); *see Walker*, 826 F.2d at 1002-03; *Hargis v. Sullivan*, 945 F.2d 1482, 1490 (10th Cir. 1991).  Nevertheless, in such situations, the guidelines may serve as a framework to determine whether sufficient jobs exist within a claimant's range of RFC.  *See Hargis*, 945 F.2d at 1490.  However, the Commissioner may carry his or her burden through the use of a VE when exclusive reliance on the guidelines is not appropriate.  *See Chaney-Everett v. Astrue*, 839 F. Supp. 2d 1291, 1299 (S.D. Fla. 2012) (citing *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989); *Walker*, 826 F.2d at 1003).  A VE provides the ALJ with a realistic appraisal of the work that a claimant is capable of performing.  *Id.* (citing *Walker*, 889 F.2d at 50).

## II.     ALJ'S APPLICATION OF THE SEQUENTIAL EVALUATION

After reviewing the evidence, the ALJ found that prior to August 27, 2019, Plaintiff could not perform his past relevant work, but there were jobs that existed in significant numbers in the national economy that Plaintiff could perform.  (Tr. 25).  However, on August 27, 2019, which was six months prior to the date when Plaintiff's age classification changed, the ALJ found that there were no jobs in the national economy that Plaintiff could perform.  (Tr. 25).  Accordingly,

the ALJ found that Plaintiff was not disabled before August 27, 2019 but became disabled on that date.  (Tr. 25-26).

Addressing the first step in the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of January 1, 2013.  (Tr. 19). Next, at step two, the ALJ found that Plaintiff had the following severe impairments: seizure disorder, multiple sclerosis, hypertension, psoriasis, and obesity.  (Tr. 19).  At step three, the ALJ found that none of Plaintiff's impairments met or medically equaled one of the listed impairments. (Tr. 19-20).  Then, at step four, the ALJ found that Plaintiff had the RFC to:

> Lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and walk for a total of 6 hours per an 8-hour workday; and sit for a total of 6 hours per an 8-hour workday.  The claimant should never climb ladders, ropes, or scaffolds.  The claimant can frequently: climb stairs and ramps; balance; stoop; kneel; crouch; and crawl.  Finally, the claimant should avoid all exposure to unprotected heights, moving mechanical parts, and operating a motor vehicle.

(Tr. 20).  This mirrored the ME's RFC determination at the supplemental hearing.  *Compare* (Tr. 20) *with* (Tr. 36).

In making this RFC determination, the ALJ noted that he considered all of Plaintiff's symptoms and the extent to which those symptoms could reasonably be accepted as consistent with the objective medical evidence.  (Tr. 20).  Although the ALJ found that Plaintiff's medically determinable impairments could reasonably cause the alleged symptoms, he found that Plaintiff's statements concerning the intensity, persistence and limiting effects of the symptoms were not supported by the evidence.  (Tr. 21).  The ALJ found that the opinion of the ME (Dr. Krishnamurthi) was persuasive because the ME had specialized knowledge of the Social Security regulations, was able to review the record in detail, and his opinion was consistent with the entire record.  (Tr. 21).  The ALJ also noted that Dr. Kidwai's opinion was somewhat persuasive.  (Tr. 22).  The ALJ acknowledged that Dr. Kidwai found that Plaintiff had some limitations regarding

12

his exposure to certain environmental conditions, among other things.  In this regard, the ALJ found that the ME's opinion was more persuasive than Dr. Kidwai's opinion.  (Tr. 22).

After discussing the RFC, the ALJ opined, based on VE Tasso's testimony, that Plaintiff had not been able to perform his past relevant work since his disability onset date of January 1, 2013.  (Tr. 23-24).  Before opining on whether there was other work in the national economy that Plaintiff could perform, the ALJ noted that Plaintiff became an individual of advanced age on August 27, 2019.[3]  (Tr. 24).  The ALJ opined that prior to August 27, 2019, there were at least three other jobs that existed in significant numbers in the national economy that Plaintiff could have performed.  (Tr. 24-25).  These were the three jobs that VE Tasso testified about: inspector for batteries, information clerk, and mail sorter.  (Tr. 25).  All three jobs were classified as light and unskilled work, which the ALJ stated was Plaintiff's "occupational base."  (Tr. 24-25).  Thus, prior to August 27, 2019, the ALJ found that Plaintiff was not disabled under the Social Security Act.  (Tr. 26).  However, after August 27, 2019 and through the date of the decision, the ALJ opined that Plaintiff was disabled under the Social Security Act as a result of his advanced age classification.  (Tr. 25-26).

### III.   ANALYSIS

#### A. Whether the ALJ erred in failing to comply with the Appeals Council's Remand Order and, if so, whether that error warrants reversal

Plaintiff argues that the ALJ erred in failing to comply with the Appeals Council's Remand Order because the ALJ did not afford him the opportunity to have a new hearing after the Appeals Council's remand.  While I agree with Plaintiff that the ALJ erred because he did not comply with

---

[3] According to the Code of Federal Regulations, Plaintiff became an individual or "person of advanced age" on February 27, 2020, the date of his 55th birthday.  (Tr. 37); 20 C.F.R. § 404.1563(e).

the Appeals Council's directive to offer Plaintiff a new hearing, I find that Plaintiff has not shown that the ALJ's error caused him any harm.

In response to Plaintiff's contention of error, Defendant articulates three arguments in support of the ALJ's decision: (1) the ALJ complied with the Remand Order because he addressed the primary issue that the Appeals Council addressed in the Remand Order; (2) it is not clear whether Plaintiff can seek relief based on an Appeals Council's remand order; (3) even if the ALJ did not comply with the Remand Order, Plaintiff has not shown any harm.  I will address Defendant's arguments in detail below.

### 1. Whether Plaintiff may request relief based on the Appeals Council's Remand Order

Plaintiff's argument assumes that this Court may decide whether the ALJ complied with the Appeals Council's Remand Order and remand the case to the Commissioner for further consideration if the ALJ did not.  Conversely, Defendant argues that the ALJ's final decision, which the Appeals Council chose not to disturb and which consequently became the final decision of the Commissioner, "is the only matter that is properly before this Court."  (DE 24 at 6).  Whether the Court may even evaluate the ALJ's compliance with the Appeals Council's Remand Order is a "threshold question."  *See Huddleston v. Astrue*, 826 F. Supp. 2d 942, 954 (S.D.W. Va. 2011).

Federal courts are divided on this question.  *See Sanders v. Astrue*, 4:11CV1735 RWS TIA, 2013 WL 1282330, at *11 (E.D. Mo. Feb. 8, 2013), *report and recommendation adopted*, 4:11 CV 1735 RWS, 2013 WL 1281998 (E.D. Mo. Mar. 27, 2013) (summarizing the differing opinions of various federal courts).  Some courts have found that an ALJ's failure to follow the Appeals Council's directives necessitates reversal and remand.  *See Acree v. Comm'r of Soc. Sec.*, 6:20-CV-591-EJK, 2021 WL 2853557, at *2 (M.D. Fla. May 7, 2021); *Seymour v. Comm'r of Soc. Sec.*, 2:15-CV-518-FTM-MRM, 2016 WL 5349513, at *8 (M.D. Fla. Sept. 26, 2016); *Scott v. Barnhart*,

592 F. Supp. 2d 360, 371 (W.D.N.Y. 2009); *Thompson v. Barnhart*, CIV.A. 05-395, 2006 WL 709795, at *12 (E.D. Pa. Mar. 15, 2006).  Other courts have found that an ALJ's failure to follow the Appeals Council's directives may, but does not always, require reversal and remand.  *See Huddleston*, 826 F. Supp. 2d at 955; *Quimby v. Comm'r of Soc. Sec.*, CIV. A. 1:09-CV-20, 2010 WL 2425904, at *8 (D. Vt. Apr. 13, 2010), *report and recommendation adopted sub nom. Quimby v. Astrue*, 1:09-CV-20, 2010 WL 2425903 (D. Vt. June 8, 2010) (applying the harmless error standard to an ALJ's failure to follow the Appeals Council's instructions).  Still other courts have found that it is not appropriate to review the issue of whether an ALJ complied with the Appeals Council's remand order because the only issue for the court's consideration is whether the ALJ's decision is supported by substantial evidence.  *See Miller v. Barnhart*, 175 F. App'x 952, 956 (10th Cir. 2006); *Sanders*, 4:11CV1735 RWS TIA, 2013 WL 1282330, at *11.  In finding that this issue is not appropriate to review, some courts have reasoned that the issue "evaporates when the Appeals Council adopts the ALJ's decision as the Commissioner's final decision." *Sanders v. Astrue*, 4:11CV1735 RWS TIA, 2013 WL 1282330, at *11; *see also Henderson v. Colvin*, 520 F. App'x 268, 274 (5th Cir. 2013) ("Had the Appeals Council thought that the ALJ had not complied with its remand order, the Appeals Council could have granted [the claimant's] request for review, which it denied.").

Although the Eleventh Circuit does not have any binding caselaw on this issue, district courts within this circuit have indicated a willingness to review an ALJ's compliance with the Appeals Council's directives.  *See Ross v. Comm'r of Soc. Sec.*, 6:12-CV-959-ORL-22GJ, 2013 WL 5236680, at *3-4 (M.D. Fla. Sept. 17, 2013) (remanding because the ALJ failed to comply with the Appeals Council's remand order and citing to district courts in Alabama and Georgia that remanded for the same reason).  The Eleventh Circuit has even opined on this issue, albeit in an

unpublished decision.[4]  *Apone v. Comm'r, Soc. Sec. Admin.*, 435 F. App'x 864, 864-66 (11th Cir. 2011).  In *Apone*, the plaintiff's primary contention on appeal was that the ALJ did not comply with the Appeals Council's remand order.  *Id.* at 865.  The Eleventh Circuit conducted a *de novo* review of whether the ALJ had complied with the Appeals Council's remand order, ultimately finding that the ALJ had complied.[5]  *Id.*  Thus, given the willingness of the Eleventh Circuit and courts within this circuit to review the issue of whether an ALJ complied with the Appeals Council's remand order, I find that it is appropriate for the Court to consider whether the ALJ complied with the Appeals Council's remand order and whether any failure to do so fatally undermined the Commissioner's final decision or resulted in a decision that is not supported by substantial evidence.[6]

---

[4] "Unpublished decisions are not binding authority and they are 'persuasive only to the extent that a subsequent panel finds the rationale expressed in that opinion to be persuasive after an independent consideration of the legal issue.'" *Collado v. J. & G. Transp., Inc.*, 820 F.3d 1256, 1259 n. 3 (11th Cir. 2016) (citing *Twin City Fire Ins. Co. v. Ohio Cas. Ins. Co.*, 480 F.3d 1254, 1260 n. 3 (11th Cir. 2007)).

[5] *Apone* has somewhat of a complicated procedural history.  *See Apone v. Astrue*, 108-CV-00219-MP-AK, 2010 WL 1381008, at *1 (N.D. Fla. Mar. 31, 2010).  Earlier in the proceedings, the district court remanded the case to the Commissioner with instructions.  *Apone*, 435 F. App'x at 864-65.  After the district court's remand, the ALJ issued an initial decision that the Appeals Council remanded to the ALJ.  *Id.* at 865.  The final decision before the Eleventh Circuit was the ALJ's second decision after the district court's remand.  *Id.*  Given this procedural history, Defendant argues that, when the Eleventh Circuit discussed compliance with a "mandate," it was referencing the district court's previous order remanding the case to the Commissioner and not the Appeals Council's remand order.  (DE 24 at 7 n.2).  However, this reading is not consistent with *Apone* and its procedural history or other courts' interpretations of that opinion.  *See Ross*, 6:12-CV-959-ORL-22GJ, 2013 WL 5236680, at *2 (citing *Apone* for the proposition that a court must enter an order in strict compliance with the Appeals Council's mandate).

[6] In Plaintiff's request for the Appeals Council to review the ALJ's final decision, he did not include this argument about the ALJ's alleged failure to comply with the Remand Order.  (Tr. 279).  However, Defendant does not point this out or argue that Plaintiff's failure to include this argument in his request for review is tantamount to a waiver.

### 2.  Whether the ALJ complied with the Appeals Council's Remand Order

The ALJ did not fully comply with the Appeals Council's Remand Order.  Here, the first page of the Appeals Council's two-page Remand Order focused solely on the ALJ's failure to address whether he considered the borderline age situation in his decision.  (Tr. 125).  On the second page of the Remand Order, the Appeals Council noted that the ALJ must "give further consideration" to Plaintiff's RFC and obtain supplemental evidence from a VE to determine whether Plaintiff could perform other work.  (Tr. 126).  Finally, the Remand Order stated "[i]n compliance with the above, the Administrative Law Judge *will offer the claimant an opportunity for a hearing*, take any further action needed to complete the administrative record and issue a new decision."  (Tr. 126) (emphasis added).  After the Remand Order, the ALJ issued a partially favorable decision, finding that Plaintiff was not disabled prior to August 27, 2019 (which was six months prior to the date Plaintiff turned 55 years old and entered the "person of advanced age" category), but was disabled as of that date.  However, the ALJ did not obtain supplemental evidence or hold another hearing before issuing this decision, and the record does not indicate that he "offered" Plaintiff the opportunity to have a hearing either.

The Code of Federal Regulations ("CFR") states that: "The administrative law judge shall take any action that is ordered by the Appeals Council and may take any additional action that is not inconsistent with the Appeals Council's remand order." 20 C.F.R. § 404.977(b).  The Eleventh Circuit has also stated that "[a] court 'may not alter, amend, or examine the mandate, or give any further relief or review, but must enter an order in strict compliance with the mandate.'"  *Apone*, 435 F. App'x at 865 (quoting *Piambino v. Bailey*, 757 F.2d 1112, 1119 (11th Cir. 1985)).  With the above language from the CFR and Eleventh Circuit case law such as *Apone* in mind, Plaintiff

argues that the ALJ erred in failing to comply with the directives in the Appeals Council's Remand Order (particularly, the directive to offer him the opportunity for another hearing).

In response, Defendant argues that the ALJ complied with the Remand Order because the purpose of the Remand Order was to address the borderline age situation. Thus, Defendant argues that by finding in Plaintiff's favor on the borderline age issue, the ALJ complied with the Remand Order. Defendant also states that the ALJ did not need to hold a hearing because Plaintiff's age was well documented throughout the record. However, these arguments go more to whether the ALJ's error was harmless (discussed further below), and not whether the ALJ complied with the Remand Order. The CFR's mandate that the ALJ "*shall* take any action that is ordered by the Appeals Council" is clear, and the ALJ's failure to follow the unambiguous instructions of the Appeals Council amounts to error. *See Stepp v. Colvin*, 8:15-CV-1183-T-27AAS, 2016 WL 4150479 (M.D. Fla. July 11, 2016), *report and recommendation adopted*, 8:15-CV-1183-T-27AAS, 2016 WL 4157334 (M.D. Fla. Aug. 2, 2016); *Meade v. Comm'r of Soc. Sec.*, 8:14-CV-2927-T-DNF, 2016 WL 1068483 (M.D. Fla. Mar. 18, 2016) (finding error when ALJ failed to offer claimant an opportunity for a hearing despite order by Appeals Council to do so).

### 3.      Whether the ALJ's error was harmful

However, the fact that the ALJ erred does not necessarily mandate remand. "[A]n error is harmless if it does not affect the ALJ's ultimate decision." *Loveless v. Comm'r, Soc. Sec. Admin*, 678 F. App'x 866, 869 (11th Cir. 2017) (citing *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983)). Plaintiff argues that the ALJ's error was harmful because he did not have an opportunity to show that he was disabled prior to his date last insured. Defendant argues that even if the ALJ erred in failing to comply with the Remand Order, Plaintiff has failed to show that the error was harmful because Plaintiff "has not made any attempt to show any relevant information that a

subsequent hearing could have provided that he did not already have an opportunity to provide."
(DE 24 at 8).  I find that Plaintiff has failed to show that any harm resulted from the ALJ's failure
to comply with the Remand Order because the ALJ issued a decision favorable to Plaintiff on the
only issue identified by the Appeals Council and Plaintiff has not identified any additional
evidence or argument that a new hearing would have elucidated.

    *Stepp* and *Meade* provide instructive counter-examples of how an ALJ's failure to follow
the Appeals Council's instructions to hold a new hearing can be harmful error.  *See Stepp*, 8:15-
CV-1183-T-27AAS, 2016 WL 4150479; *Meade*, 8:14-CV-2927-T-DNF, 2016 WL 1068483.  In
*Stepp*, the Appeals Council directed the ALJ to offer the claimant an opportunity for a hearing and
to consider whether the claimant needed a hand-held assisted device, such as a cane, to walk.
*Stepp*, 8:15-CV-1183-T-27AAS, 2016 WL 4150479 at *5.  However, the ALJ issued an
unfavorable decision without holding a hearing or offering to hold a hearing.  *Id.*  On judicial
review of the ALJ's decision, the court found that the ALJ not only erred in failing to offer the
claimant a hearing but also erred in failing to "properly refute" the opinion of the claimant's
treating physician who opined that a cane was "medically necessary for the [claimant] to ambulate
independently."  *Id.* at *6-7.  In other words, by failing to follow the Appeals Council's directions,
the ALJ failed to address an identified deficiency in the analysis of the claimant's condition and
prevented a finding that the ALJ's conclusions were based on substantial evidence.  *Id*.  Thus, the
court found that the ALJ's error was not harmless and reversed and remanded the case to the
Commissioner.  *Id.* at *8.  In *Meade*, after an initial unfavorable decision, the ALJ also disregarded
the Appeals Council's mandate to offer the claimant an opportunity for a hearing and entered a
second unfavorable decision without holding a hearing.  *Meade*, 8:14-CV-2927-T-DNF, 2016 WL
1068483 at *3-4.  On judicial review of the ALJ's decision, the court also found that the ALJ erred

in failing to offer the claimant an opportunity for a hearing as directed by the Appeals Council. *Id.* at *5. Thus, the court reversed and remanded the case to the Commissioner. *Id.* at *5-6. In the opinion, the court declined to address the claimant's other issues stating that "[the p]laintiff's opportunity to be heard may alter the ALJ's evaluation of [the p]laintiff's claim of disability." *Id.* at *5.

*Ross* is also instructive on the issue of harmful error. *See Ross*, 6:12-CV-959-ORL-22GJ, 2013 WL 5236680. There, after the ALJ's initial unfavorable decision, the claimant requested review from the Appeals Council and submitted new evidence along with her request. *Id.* at *1. The Appeals Council remanded the case to the ALJ and directed the ALJ to address the new evidence. *Id.* Upon remand and after holding another hearing, the ALJ issued a second unfavorable decision. *Id.* However, the ALJ's second unfavorable decision failed to address the new evidence that the claimant submitted to the Appeals Council. *Id.* The court concluded that "[t]his failure to comply with the Appeals Council's order . . . does not constitute harmless error, thus requiring a remand for further proceedings." *Id.* at *4.

Here, unlike *Stepp*, *Meade*, and *Ross*, the ALJ entered a partially favorable decision. This partially favorable decision accounted for the borderline age situation, which was the only basis for remand articulated in the Appeals Council's Remand Order. This stands in stark contrast to *Stepp* and *Ross* where the ALJs failed to address the issues that prompted the Appeals Council's remand. *See Stepp*, 8:15-CV-1183-T-27AAS, 2016 WL 4150479 at *5; *Ross*, 6:12-CV-959-ORL-22GJ, 2013 WL 5236680 at *4. More significantly, as Defendant argues, Plaintiff has not pointed to any new evidence or arguments that he would have presented to the ALJ at his new hearing or any additional questions that could or should have been directed at the VE. In other words, there

is no indication that a new hearing would have amounted to anything more than a chance for Plaintiff to re-argue about the same evidence already in the record.

Plaintiff argues that the failure to offer him an opportunity for a de novo hearing deprived him of due process.  However, he does so only in conclusory fashion and, again, without any explanation of how a new hearing would have been any different from the original hearing (particularly without any additional evidence to consider).  Instead, in support of his due process argument, Plaintiff essentially argues that the Court should act as if the original hearing never occurred because the Appeals Council's Remand Order "vacated" the ALJ's initial decision, "erasing" the original findings and testimony in the ALJ's original decision.  (DE 23 at 7).  Thus, Plaintiff contends the decision to find him not disabled for the period "prior to the established onset date has essentially been decided 'on the record' for purposes of the standing decision."  (DE 26 at 4).  However, Plaintiff cites no law or internal agency regulation in support of these positions.

Ultimately, as further discussed below, "substantial evidence supports the ALJ's decision, and thus any error with respect to the ALJ's failure to comply with the Appeals Council's instructions is harmless."  *Quimby*, CIV. A. 1:09-CV-20, 2010 WL 2425904, at *8.  Therefore, to remand the case as Plaintiff desires solely because he was not offered another hearing would be a "wasteful corrective exercise."  *Sanchez v. Comm'r of Soc. Sec.*, 507 F. App'x 855, 856 (11th Cir. 2013).

### B. Whether the ALJ erred in failing to include some of Dr. Kidwai's environmental limitations in his RFC assessment

Plaintiff argues that the ALJ's RFC assessment was insufficient because it did not include some of the environmental limitations Dr. Kidwai opined Plaintiff had.  However, I find that the ALJ's RFC assessment is supported by substantial evidence.

Plaintiff's argument is based upon the limitations Dr. Kidwai assessed at an August 1, 2019 neurological evaluation.  (Tr. 409-16).  Although the ALJ's RFC accounted for the postural limitations Dr. Kidwai assessed, it did not incorporate some of the environmental limitations Dr. Kidwai assessed.  (Tr. 20, 411-16).  Specifically, the ALJ did not include Dr. Kidwai's opined limitations regarding exposure to humidity, wetness, dust, odors, fumes, pulmonary irritants, extreme temperatures, and vibrations.  (Tr. 20, 25).  Plaintiff argues that the ALJ erred because he failed to include or even mention why he did not include these limitations.  However, Plaintiff misconstrues the ALJ's decision.  The ALJ explicitly "acknowledge[d]" that Dr. Kidwai provided opinions regarding environmental limitations.  (Tr. 22) ("The undersigned acknowledges that Dr. Kidwai did provide opinions regarding other various limitations concerning the claimant's ability to . . . tolerate exposure to certain conditions").  The ALJ incorporated Dr. Kidwai's limitation that Plaintiff should never be exposed to unprotected heights and moving mechanical parts.  (Tr. 20, 415).  Additionally, the ALJ found that Plaintiff should be limited even further than Dr. Kidwai suggested regarding motor vehicles.  (Tr. 20, 415).

Plaintiff is correct that the ALJ did not incorporate Dr. Kidwai's limitations regarding exposure to humidity, wetness, dust, odors, fumes, pulmonary irritants, extreme temperatures, and vibrations.  However, I find that the ALJ's decision in this regard is supported by substantial evidence.  Although the ALJ only found that Dr. Kidwai's opinion was "somewhat persuasive," he found that the ME's opinion was "persuasive" because the ME had the opportunity to view more evidence before making his assessment.  (Tr. 22).  After reviewing the record, the only environmental limitations the ME opined Plaintiff should have (avoiding exposure to unprotected heights, moving mechanical parts, and operating a motor vehicle) were incorporated in the ALJ's RFC.  The ME's limitations, and the ALJ's RFC by consequence, are supported by and consistent

22

with the environmental limitations that the State Agency physician (Joseph Chiaro, M.D.) assessed on September 25, 2018.  (Tr. 96-104).  Dr. Chiaro opined that Plaintiff could have unlimited exposure[7] to extreme cold, extreme heat, wetness, humidity, noise, and vibration and should avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation and avoid even moderate exposure to hazards such as machinery and heights.  (Tr. 102-04).  Dr. Chiaro noted that these limitations were due to Plaintiff's history of seizures.  (Tr. 103).  The ALJ found that Dr. Chiaro's opinion, including his assessment of these "minimal" environmental limitations, was highly persuasive.  (Tr. 23).  Contrastingly, Dr. Kidwai, whose opinion the ALJ only found to be "somewhat persuasive," did not identify any medical or clinical findings that supported the environmental limitations he assessed and did not opine on whether the limitations would last longer than twelve months.  (Tr. 415).  Thus, the ALJ's findings regarding Dr. Chiaro and the ME's opinion (who both assessed less restrictive environmental limitations than Dr. Kidwai) also support his decision to disregard some of the environmental limitations in Dr. Kidwai's opinion.

Finally, even assuming *arguendo* that the ALJ erred in failing to include the environmental limitations that Dr. Kidwai assessed, any error is harmless because those limitations would not have changed the VE's testimony on which the ALJ relied to find Plaintiff not disabled.  *See Diorio*, 721 F.2d at 728 (applying the harmless error standard in social security cases).  A recent case in the Eastern District of Missouri illustrates an analogous situation.  *See Marshall v. Kijakazi*, 4:20-CV-00665-SPM, 2021 WL 4439256, (E.D. Mo. Sept. 28, 2021).  In *Marshall*, the court also faced the issue of whether an ALJ erred in failing to include certain environmental restrictions

---

[7] *Sims v. Comm'r of Soc. Sec.*, 3:12-CV-1262-J-MCR, 2013 WL 5567412, at *5 (M.D. Fla. Oct. 9, 2013) ("[S]tate agency physicians are given four choices to evaluate the severity of a claimant's environmental restriction: unlimited, avoid concentrated exposure, avoid even moderate exposure, and avoid all exposure.").

assessed by a medical source.  *Id.* at *5.  Ultimately, that court opined that the ALJ's determination not to include the environmental restrictions was proper.  *Id.*  But even if the ALJ erred in failing to include certain environmental restrictions, the court deemed any such error harmless because the ALJ included those restrictions in a hypothetical question posed to the VE. *Id.*  That is precisely what happened here.

At the supplemental hearing, Plaintiff's attorney inquired of VE Tasso whether the environmental limitations at issue (exposure to humidity, wetness, dust, odors, fumes, pulmonary irritants, extreme cold, extreme heat, and vibrations) would affect the hypothetical individual's ability to perform the jobs VE Tasso identified.  (Tr. 40).  VE Tasso stated that even with the environmental limitations at issue, the hypothetical individual with Plaintiff's RFC would still be able to complete the mail sorter, information clerk, and inspector for batteries positions he proposed.  (Tr. 40).  Therefore, while I find that substantial evidence supports the ALJ's RFC, I also find that any error in failing to incorporate the environmental limitations into the RFC did not undermine the VE testimony on which the ALJ rested his ultimate finding that Plaintiff was not disabled.

### C. Whether the ALJ failed to evaluate Plaintiff's subjective symptoms in accordance with the Regulations and the Eleventh Circuit's Standard

Plaintiff contends that the ALJ failed to properly assess his subjective symptoms in accordance with the regulations and Eleventh Circuit precedent.  However, after my review of the record, I find that the ALJ adequately considered the Plaintiff's subjective symptoms, and his evaluation of Plaintiff's subjective symptoms is supported by substantial evidence.

The Eleventh Circuit requires ALJs to apply a multi-part "pain standard" when a claimant attempts to show disability through their own testimony about pain or other subjective symptoms. *See Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).  This pain standard requires that a

claimant establish "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." *Wilson*, 284 F.3d at 1225 (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)). If the claimant meets the pain standard, the ALJ must consider "all evidence about the intensity, persistence, and functionally limiting effects of pain or other symptoms . . . in addition to the medical signs and laboratory findings in deciding the issue of disability." *Perez v. Comm'r of Soc. Sec.*, 625 F. App'x 408, 420 (11th Cir. 2015). Specifically, an ALJ considers objective medical evidence; a claimant's daily activities; the location, duration, frequency, and intensity of a claimant's pain and other symptoms; precipitating and aggravating factors; medication the claimant takes to alleviate pain and other symptoms (the type, dosage, effectiveness, and side effects of that medication); treatment, other than medication, the claimant has received to alleviate pain or other symptoms; measures, other than treatment or medication, the claimant uses to alleviate pain or other symptoms; and inconsistencies in the evidence. 20 C.F.R. §§ 404.1529(c), 416.929(c).

After consideration of the evidence, the ALJ may choose to either credit or discredit a claimant's testimony regarding pain. "[T]he ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." *Foote*, 67 F.3d at 1562. Once an ALJ explicitly discredits a claimant's testimony and finds that a claimant's "statements concerning the intensity, persistence, and limiting effects" of their impairments are not credible or implicitly makes a similar credibility finding, a reviewing court should not second-guess that finding. *See Preston v. Comm'r, Soc. Sec. Admin.*, 748 F. App'x 268, 271 (11th Cir. 2018); *see also Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011) ("The

question is not . . . whether [the] ALJ could have reasonably credited [the claimant's] testimony, but whether the ALJ was clearly wrong to discredit it.").

In this case, the ALJ found that Plaintiff met the pain standard because his impairments could reasonably be expected to cause the symptoms he alleged.  However, the ALJ opined that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his alleged symptoms were not supported by the evidence.  Plaintiff contends that the ALJ did not adequately discuss or consider his subjective symptoms.  A review of the ALJ's decision reveals that the ALJ articulated sufficient reasons for discrediting Plaintiff's subjective symptoms and that the ALJ's decision is supported by substantial evidence.  The ALJ detailed his reasoning for failing to credit Plaintiff's testimony that seizures caused limitations that were work preclusive.  First, the ALJ detailed the findings of the ME, who noted that Plaintiff had not had a seizure for eight months prior to his August 1, 2019 neurological evaluation with Dr. Kidwai.  The ALJ found the ME's RFC assessment, which the ALJ eventually adopted, and opinion that Plaintiff's impairments did not meet a listed impairment to be persuasive.  The ALJ also found Dr. Kidwai's findings to be somewhat persuasive.  Dr. Kidwai's RFC assessment was similar to the ME's, and he opined that Plaintiff's seizure disorder and seizures were "under control."  Thus, the ALJ's discussion of the ME and Dr. Kidwai's opinions alone shows that he adequately articulated reasons for disregarding Plaintiff's subjective statements regarding his seizures.  The ALJ also noted various other findings in his reasoning for why he discounted Plaintiff's subjective statements regarding his seizures. These included records from October 2019 in which Plaintiff indicated he did not have a seizure for a year; records from December 2017 that showed Plaintiff did not generally seek treatment for his seizures and that his last seizure at that time, which was in June 2017, was "mild"; records from June 2016 in which Plaintiff indicated that he experienced "a little tremor once every 3

months but otherwise [experienced] no seizures"; and records from August 2014 that indicated Plaintiff's epilepsy remained "well-controlled." (Tr. 21-22). Therefore, I find that the ALJ adequately articulated reasons why he discounted Plaintiff's testimony on the limiting effects of Plaintiff's seizures.

Other than his seizures, Plaintiff argues that the ALJ did not consider his tremor, headaches, fatigue, psoriatic rash, that he was a poor historian, and a mental status examination score. However, the ALJ explicitly mentioned some of these symptoms. For example, the ALJ noted that although Plaintiff complained of a rash on his knee at an October 25, 2018 doctor's visit, he did not have any musculoskeletal or neurological issues. (Tr. 22, 392, 528). The notes from the October 25, 2018 doctor's visit also indicate that Plaintiff tested negative for both headaches and dizziness. (Tr. 392, 528). The ALJ also noted that on June 10, 2016, Plaintiff characterized his tremor as "little" and stated that it occurred "once every 3 months." (Tr. 487). To the extent that the ALJ did not mention Plaintiff's other statements or complaints, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision." *Dyer*, 395 F.3d at 1211. Even if an ALJ fails to mention all a claimant's subjective statements and complaints of pain, his decision to discredit those complaints may be upheld as long as it "is not a broad rejection." *Id.* I find that the ALJ did not broadly reject Plaintiff's statements and complaints of pain. Thus, even though the ALJ may not have mentioned all of Plaintiff's subjective statements and complaints, the implication is clear that the ALJ did not find Plaintiff's subjective complaints to be credible.

Additionally, Plaintiff argues that the ALJ should not have considered his lack of treatment without also considering his ability to afford that treatment. However, ALJs are permitted to consider the nature and frequency of treatment when evaluating a claimant's subjective statements. *See id.* (stating that an ALJ adequately discredited a claimant's testimony "by explaining that []his

pain had not require[d] routine or consistent treatment, and he often went for months or years between complaining of this pain to his physicians"); *Falcon v. Heckler*, 732 F.2d 827, 832 (11th Cir. 1984) (finding the ALJ properly considered the claimant's conservative treatment in assessing her credibility).  Furthermore, this is not a case where the ALJ "primarily" or "exclusively" relied on Plaintiff's failure to seek treatment in assessing his credibility.  *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1268 (11th Cir. 2015) ("When the ALJ 'primarily if not exclusively' relies on a claimant's failure to seek treatment, but does not consider any good cause explanation for this failure, this court will remand for further consideration.").  Here, Plaintiff's failure to seek treatment was one of several reasons the ALJ provided as the basis for discounting Plaintiff's subjective complaints.

In summation, I find that the ALJ adequately considered Plaintiff's subjective complaints and his decision to discount them is supported by substantial evidence.

### D.  Whether the ALJ Erred in Relying on the VE's Testimony

Plaintiff argues that the ALJ erred because there were apparent conflicts between the VE's testimony and the Dictionary of Occupational Titles ("DOT") that the ALJ failed to resolve before relying on the VE's testimony to support his disability determination.  However, after a close review of the DOT descriptions of the relevant positions and the VE's testimony, I find that there were no apparent conflicts as Plaintiff claims and that the ALJ properly relied on the VE's testimony.

As stated above, at step five of the sequential evaluation, the burden shifts to the Commissioner to show that there are other jobs in the national economy that the claimant can perform.  *Washington*, 906 F.3d at 1360.  The ALJ must determine, in light of the DOT and the VE's testimony regarding the jobs therein, "whether jobs exist in the national economy in

significant numbers that the claimant could perform in spite of his impairments." *Id.* at 1360. Social Security Ruling 00-4P imposes an "affirmative duty" to reconcile conflicts between VE testimony and the DOT. *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1321 (11th Cir. 2021). "Specifically, the ALJ must . . . identify any 'apparent' conflicts, regardless of whether that conflict is brought to the ALJ's attention by the parties or the VE." *Id.* When an apparent conflict arises, "the ALJ must resolve the conflict before relying on the VE's evidence to support a determination that a claimant is or is not disabled." *Id.* If an ALJ fails to resolve an apparent conflict, her decision cannot be supported by substantial evidence unless the error can be deemed harmless. *Washington*, 906 F.3d at 1356; *Massachi v. Astrue*, 486 F.3d 1149, 1154 n.19 (9th Cir. 2007) (concluding that an ALJ's failure to resolve an apparent conflict may be deemed harmless "if the vocational expert had provided sufficient support for her conclusion so as to justify any potential conflicts"). A conflict is "apparent" if it is "reasonably ascertainable or evident" when the VE's testimony is compared with the DOT. *Washington*, 906 F.3d at 1365-66. In construing what should be apparent to an ALJ, we assume that ALJs have "ready access to and a close familiarity with the DOT." *Id.* at 1366.

### 1. Inspector for Batteries

Here, at step 5 of the sequential evaluation, the ALJ opined that Plaintiff could perform the "inspector for batteries" position based on the VE's testimony. Under the DOT, an inspector for batteries "[i]nspects finished or in-process dry cell or storage batteries for defects, such as dents, scratches, short electrodes, or missing parts: Examines batteries to detect defects and places defective batteries in box. May test batteries, using voltmeters and ammeters. May replace damaged parts." *Dictionary of Occupational Titles* (hereinafter "*DOT*") § 727.687-062 ("Inspector") (4th ed. 1991), 1991 WL 679674. Plaintiff argues that there was an apparent conflict

because the inspector for batteries position requires exposure to some of the environmental hazards to which Dr. Kidwai opined Plaintiff could not be exposed (fumes, pulmonary irritants, and moving mechanical parts).  Plaintiff's argument is primarily based on combining the above definition from the DOT with a description from the Occupational Outlook Handbook, which states that the position of a "quality control inspector" may require exposure to "hazardous contaminants, such as airborne particles that irritate the eyes and skin."  Bureau of Labor Statistics, U.S. Department of Labor, Occupational Outlook Handbook, *Quality Control Inspectors*, https://www.bls.gov/ooh/production/quality-control-inspectors.htm (last visited August 10, 2022).

I find that Plaintiff's argument regarding the inspector for batteries position fails for several reasons.  Plaintiff's argument primarily fails because the ALJ's RFC determination did not include the environmental limitations that Dr. Kidwai assessed, and, as discussed above in section III.B, substantial evidence supports that portion of the ALJ's RFC determination.  As stated above, the ALJ articulated sufficient reasons why he did not include the environmental limitations assessed by Dr. Kidwai in Plaintiff's RFC.  Given my finding that the ALJ's assessment of Plaintiff's RFC was adequate, Plaintiff has not identified a "reasonably ascertainable or evident" conflict between his RFC and the VE's testimony that he could perform the inspector for batteries position.

Plaintiff's argument also fails because he relies on the Occupational Outlook Handbook, a source outside of the DOT,  to support his contention that there is an apparent conflict.  *See Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 158 (6th Cir. 2009) (stating that an ALJ is not required to resolve conflicts between the VE and the Occupational Outlook Handbook).  As stated in *Washington*, apparent conflicts are determined when VE testimony is compared to the information within the DOT, not any other source.  906 F.3d at 1365.  Finally, Plaintiff's argument fails because the VE explicitly testified that Plaintiff could perform the inspector for batteries position even with

the environmental limitations that Dr. Kidwai assessed.  The VE's testimony in this regard is bolstered by the DOT, which states "Not present - Activity or condition does not exist" for the following environmental limitations: humidity, wetness, vibration, moving mechanical parts, high exposed places, radiation, explosives, toxic caustic chemicals, other environmental conditions. *DOT* § 727.687-062 ("Inspector"), 1991 WL 679674.

### 2. Information Clerk and Mail Sorter

At step 5 of the sequential evaluation, in addition to the "inspector for batteries" position, the ALJ found, based on the VE's testimony, that Plaintiff could perform the "information clerk" and "mail sorter" positions.  Plaintiff argues that the general educational development ("GED")[8] reasoning level required for the information clerk and mail sorter positions (4 and 3, respectively), conflicts with the ALJ's limitation to unskilled work. *See DOT* § 209.687-026 ("Mail Clerk or Mail Sorter"), 1991 WL 671813; § 237.367-018 ("Information Clerk"), 1991 WL 672187. Plaintiff's argument is based primarily on *Viverette v. Comm'r of Soc. Sec.*, 13 F.4th 1309 (11th Cir. 2021).  In *Viverette*, the Eleventh Circuit opined that there was an apparent conflict between the limitation in an RFC to simple, routine, and repetitive tasks and the GED reasoning level of 3. 13 F.4th at 1319.  Plaintiff argues that the ALJ's limitation to unskilled work was tantamount to a mental limitation to simple, routine, and repetitive tasks.  Because the information clerk and mail sorter positions both require GED reasoning levels of 3 or above, Plaintiff argues that, under

---

[8] "General Educational Development embraces those aspects of education (formal and informal) which are required of the worker for satisfactory job performance. This is education of a general nature which does not have a recognized, fairly specific occupational objective." *General Educational Development*, Dictionary of Occupational Titles, Appendix C, 1991 WL 688702. "The GED scale is composed of three divisions: Reasoning Development, Mathematical Development, and Language development." *Id.*  GED levels are rated on a scale from 1 to 6, with 1 being the lowest and 6 the highest.  *Id.*

*Viverette*, there was an apparent conflict between the VE's testimony that he could perform those positions and the ALJ's limitation to unskilled work.

I find that Plaintiff's argument misses the mark. The ALJ's limitation to unskilled work was not a mental limitation but rather concerned the transferability of job skills. *See Chapo v. Astrue*, 682 F.3d 1285, 1290 (10th Cir. 2012) ("While the jobs cited by the VE happen to be unskilled, that just accounted for issues of skill transfer, not impairment of mental functions—which 'are not skills but, rather, general prerequisites for most work at any skill level.'" (citations omitted)). This conclusion—that the ALJ's limitation to "unskilled" work was not a mental limitation—is further supported by the fact that (1) the ALJ discussed this limitation in the transferability of jobs section of his decision, *see* (DE 17 at 24), and not the RFC section, *see* (DE 17 at 20-23), and (2) neither the ALJ nor any of the medical sources limited Plaintiff to simple, routine, and repetitive tasks.

Under the DOT, the information clerk and mail sorter positions both have an SVP of 2. *DOT* § 209.687-026, 1991 WL 671813; § 237.367-018, 1991 WL 672187. Positions with an SVP of either 1 or 2 are classified as unskilled work. *See* SSR 00-4p, 2000 WL 1898704 (Dec. 4, 2000) ("[U]nskilled work corresponds to an SVP of 1-2; semi-skilled work corresponds to an SVP of 3-4; and skilled work corresponds to an SVP of 5-9."). As is clear from the VE's mention of, and the ALJ's subsequent citations to, three positions with an SVP of 2, when the ALJ referenced unskilled work in his decision, he was referring to the corresponding SVP of the positions that he opined Plaintiff could perform and not a mental limitation. The ALJ's limitation to unskilled work acknowledges that he opined Plaintiff could complete all the jobs in the unskilled category, which have either an SVP of 1 or 2, without regard to the GED reasoning, math, or language levels of those jobs. Accordingly, the GED reasoning level associated with the information clerk and mail

sorter positions does not impact or conflict with the ALJ's assessment of a limitation to unskilled work.[9]

In summation, the ALJ properly relied on the VE's testimony to support both his findings at step 5 of the sequential evaluation and his ultimate determination that Plaintiff was not disabled prior to August 27, 2019.

## **CONCLUSION**

For the reasons discussed above, I respectfully **RECOMMEND** that the District Court **DENY** Plaintiff's Motion (DE 23) and **GRANT** Defendant's Motion (DE 24).

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable Rodolfo A. Ruiz, II, United States District Judge.  Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice.  *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1.

**DONE AND SUBMITTED** in Fort Lauderdale, Florida this 10th day of August 2022.

*Jared Strauss*
**Jared M. Strauss**
**United States Magistrate Judge**

---

[9] Importantly, Plaintiff does not argue that the ALJ's RFC finding limiting Plaintiff to unskilled work was deficient or that the RFC finding should have included a more stringent limitation to simple, routine, and repetitive tasks.